■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OTIS D. TILLIE, Appellant. [657 NYS2d 791] —Peters, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered February 2, 1996, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the first degree.

This appeal primarily challenges County Court's determination of probable cause. Evidence presented at both the suppression hearing and at trial revealed that on March 21, 1995, Sergeant William Maloney, a 30-year veteran with the Elmira Police Department in Chemung County assigned to the traffic bureau, was approached by a private citizen whom he had known for over a decade. That citizen, who had provided reliable information to him in the past, described overhearing a conversation between a person known to the informant as "Weezie" and defendant, where Weezie, about to take a trip to New York City, asked defendant if he wanted to get "in on it" because this was going to be "the big one". The informant advised that Weezie and defendant would be going on that trip to make a cocaine purchase on the day that the information was provided to the officer, that they would be driven in a white Pontiac Transport van with tinted windows which was then located at a residence on Matthews Street in the City of Elmira and that they would be accompanied by Aaron Thompkins and Sue Parsons. Maloney immediately turned the information over to Narcotics Investigator Daniel Miller. Aware that the Elmira Police Department had prior reports concerning the involvement of Parsons, Thompkins, Weezie and defendant in drug activity, he promptly visited the corner of Sullivan and Matthews Streets where Thompkins and Parsons resided and observed Thompkins walking toward his 1990 white Pontiac Transport van. Shortly thereafter, he returned to the scene to discover that the van was gone. Throughout the day, he periodically returned to determine whether the van had returned.

Further aware that another intelligence report revealed that Weezie was in possession of a firearm, Miller issued a "File 25".[1] At the change of shifts, he informed Captain Michael Ross and Sergeant David Gardner about the purported drug

1. The "File 25" bulletin read: "This agency has received information from a confidential informant that the following person will be transporting an undetermined amount of cocaine from New York City to Elmira, with return trip being made this evening, 03-21-95, or early morning hours of 03-22-95. Route 17 is believed to be the route used by subjects. Subjects will be operating a 1990 Pontiac Transport, color white, New York registration E530RF, or '89 Plymouth Voyager, color white, New York registration G734FH. The Pontiac Transport is believed to be the transporting vehicle.

run. At 10:45 P.M., Officer Patrick Johnson was dispatched in an unmarked car to watch traffic on State Route 17 as it arrived into the City of Elmira. He parked at the Tomahawk Restaurant where he waited for the vehicle to pass. At approximately 11:28 P.M., he saw the vehicle and followed it off the exit ramp where it entered the City, changing lanes without signaling. As it approached another street, it again made a turning movement without signaling. Johnson, waiting for sufficient backup, attempted to stop the van only after a marked unit was behind him. The van, however, did not immediately stop. Instead, it slowed down and moved toward the shoulder of the street, continuing northward for approximately a quarter of a mile before coming to a stop. As Johnson approached the vehicle, two males, including defendant, exited from a right side passenger door and fled.

As the probable cause for stopping the vehicle was initially based upon information received from a confidential informant, the People were required to establish the informant's reliability and basis of knowledge (*see, Aguilar v Texas*, 378 US 108, 114). Upon our review of the record, of the in camera testimony of the informant, the testimony of Maloney to the effect that the informant was never compensated for information received or involved in a "current predicament" in the criminal justice system (*People v Rodriguez*, 52 NY2d 483, 489), and that prior information disclosed by this informant had been found trustworthy (*see, id.*, at 489), we find adequate indicia of reliability. Moreover, not only was the informant's reliability established prior to the March 21, 1995 conversation with Maloney, but the basis of knowledge prong was provided by revelation of the informant who personally overheard the conversation and by police investigation which corroborated the information provided (*see, People v Bigelow*, 66 NY2d 417, 423-424; *People v Rivera*, 176 AD2d 373, 374, *lv denied* 79 NY2d 831). Accordingly, we conclude, as did County Court, that the two-prong test of *Aguilar v Texas* (*supra*) was satisfied.

Probable cause to arrest a person for an offense without a warrant exists when a police officer has knowledge of facts and circumstances " 'sufficient to support a reasonable belief that an offense has been or is being committed' " (*People v Maldonado*, 86 NY2d 631, 635, quoting *People v Bigelow, supra*, at 423; *People v Lewis*, 198 AD2d 605, 606). Under the "fellow of-

Occupants as follows: Aaron Thompkins, Junior; Alexander 'Weezie' Green; Sue Parsons." With respect to Alexander Green, the description further read: "Alexander Green, a/k/a Weezie Green, black male, date of birth, 04/04/73; six foot, 155 pounds, possibly in possession of a handgun."

ficer rule", one can impute probable cause to the arresting officer when he or she is "acting at the direction of another law enforcement officer who has the requisite probable cause" (*People v Maldonado, supra,* at 635). Mindful that "[o]nce a challenge to the receiver's action is made on the motion to suppress * * * the presumption of probable cause disappears from the case and the People must demonstrate that the sender or sending agency had probable cause to act" (*People v Hummer,* 228 AD2d 783, 785, *lv denied* 88 NY2d 1021). Upon this record, we conclude that Johnson had probable cause to act based upon the information provided by both Maloney and Miller.

Similarly unavailing is defendant's contention that the stop of the van for alleged traffic violations was a "pretextual" stop (*see, People v Ynoa,* 223 AD2d 975, 977, *lvs denied* 87 NY2d 1024, 1027). While we need not reach this issue since we agree with County Court that probable cause existed separate and apart from the purported traffic violations, we note that while Johnson was aware that defendant was suspected of drug trafficking, there was ample evidence in the record indicating that the van could also have been stopped due to the traffic infractions (*see, People v Ross,* 228 AD2d 718, 718-719, *lv denied* 88 NY2d 993).

As to defendant's arrest, we note that after Officer Daren Minch and Officer Michael Marrone pursued and captured defendant and the other fleeing passenger, each independently recovered a package wrapped in paper towels from areas traversed by the fugitives. These packages, each secured by a rubber band, contained, *inter alia,* rock cocaine in a pie-shaped mold that had been broken up. While we agree that "[f]light alone is generally an insufficient basis for either seizure or the limited detention involved in pursuit" (*People v Manning,* 199 AD2d 621, 621-622, *lv denied* 83 NY2d 855), when one considers the circumstances present here, we find that they "clearly created a reasonable suspicion that defendant had or was committing a crime justifying pursuit and a forcible stop and detention" (*People v Defares,* 209 AD2d 875, 876, *lv denied* 84 NY2d 1030).

Since the charges were proffered prior to the legislative annulment of the standards enunciated in *People v Ryan* (82 NY2d 497) (*see,* L 1995, ch 75), the People were required to prove beyond a reasonable doubt that defendant was aware that he possessed cocaine and that its aggregate weight was at least four ounces. Pursuant to that obligation, the People offered a voluntary statement given by defendant to a law enforcement officer on October 1, 1993 wherein he described,

in detail, his experience in dealing drugs. Finding such statement relevant to the issue of knowledge regarding the aggregate weight of the cocaine transported, we find County Court's admission thereof to be justified[2] (*see, People v Malsh,* 188 AD2d 686, 688, *lv denied* 81 NY2d 973).

Similarly without merit is defendant's contention that County Court erred in permitting Gregory Watkins, an undercover narcotics investigator, to testify regarding general drug trafficking information (*see, People v Sanchez,* 86 NY2d 27, 33; *People v Pearson,* 224 AD2d 779, *lv denied* 88 NY2d 940; *People v Gonzalez,* 180 AD2d 553, *lv denied* 79 NY2d 1001). We further find no deficiency in the chain of custody which would preclude the admission of the cocaine into evidence. The combined testimony of the forensic scientist and the police officers provided, in our opinion, sufficient assurances of both the identity of the substance and its unchanged nature (*see, People v Pearson, supra*).

Having been convicted upon what we find to be legally sufficient evidence (*see, People v Bleakley,* 69 NY2d 490, 495), defendant is precluded from challenging the sufficiency of the evidence before the Grand Jury (*see, People v Schulze,* 224 AD2d 729, *lv denied* 88 NY2d 853).

Accordingly, the judgment of County Court is affirmed in its entirety.

Cardona, P. J., Casey, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.

---

2. County Court also instructed the jury that it should not consider the statement as evidence that defendant committed the crime charged in the indictment or any other crime.