[671 NYS2d 439]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT
WASHINGTON, Respondent.

First Department, January 27, 1998

**APPEARANCES OF COUNSEL**

*Stuart P. Levy* of counsel *(Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for appellant.

*Jay L. Weiner* for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

The People appeal from an order suppressing a gun recovered

from a livery cab in which defendant had been the sole passenger, and defendant's subsequent postarrest videotaped statement to the police. The essential facts disclosed at the hearing are not in dispute.

On September 24, 1992, at about 11:40 P.M., Police Officer Enrique Garcia and two other officers, on anticrime assignment, were driving, in plain clothes and in an unmarked police car, northbound on White Plains Road in the vicinity of 228th Street, when they observed a livery cab driving in an erratic manner. Officer Garcia followed the cab for four blocks. The cab was "swerving to the left after signaling right, trying to swerve to the right while signaling left, crossing the double yellow line, stopping short and starting again almost hitting the train trestle and continue [sic] straight forward."

At 232nd Street, a one-way street, the cab turned right, going in the wrong direction. At that point, Officer Garcia decided to stop the cab. The area was well illuminated by nearby street lights, enabling Officer Garcia to see into the cab. As he stepped out of the police vehicle and approached the driver's side of the cab, he observed defendant, the cab's sole passenger, seated in the right rear passenger's seat, bend down, "make certain movement with his arms" and then "snap up real quick and sit up straight."

Officer Garcia approached the driver and asked if anything was wrong and for an explanation as to why he was swerving in and out of traffic. The driver stated that he had become confused by the passenger's conflicting directions, "telling me to go left, go right * * * stop, make a right turn here and then change his mind." Concerned about the safety of his brother officers and the cabdriver, as well as his own, Officer Garcia asked Sergeant Natale, who was standing by the right rear door, to have the passenger step out of the cab. As the sergeant opened the right rear door, after asking the passenger, defendant, to step out, Officer Garcia opened the left rear passenger door and watched carefully as defendant exited the cab. As soon as defendant stepped out of the vehicle, Garcia observed the butt of a handgun sticking out from under the back of the front passenger's seat. The officer reached under the seat and recovered a silver .44 calibre magnum revolver, approximately six inches in length. The officers arrested defendant, who subsequently gave them a videotaped statement. They never asked the driver to exit the cab or produce his driver's license and registration. Nor did they issue him a traffic summons.

Rejecting defendant's argument that the cab was stopped not for a traffic violation but rather because the officer had

"some kind of suspicion" of a robbery, although there had been no testimony to that effect, the hearing court found that it was "clear that the traffic violation was the reason the officers pulled the livery cab over and not the desire to investigate defendant in any unrelated matter." Thus, it denied suppression, finding, on the basis of the officer's observation of the various traffic infractions, that the stop was based on reasonable suspicion. The court found that the defendant's movements coupled with the driver's explanation for his erratic driving gave the officer reason to focus his attention on defendant and remove defendant from the vehicle to ensure the safety of the officers.

On receipt of the hearing court's decision, defendant moved orally to reopen the suppression hearing, relying on an Assistant District Attorney's "write-up" of Officer Garcia's statement to him as to the circumstances of the arrest. According to the write-up, Garcia stated that he had "observed [the] livery cab driving in an erratic manner" and that, after following the cab for a few blocks, he "pulled the livery cab over to investigate a possible robbery in progress." Although defense counsel had to concede that at the time of the hearing he had the write-up but had overlooked it in the cross-examination of Officer Garcia, he requested that the hearing be reopened because, had the document been used during cross-examination, the court might have reached a different conclusion. Finding the write-up to constitute "new evidence", the court, over the prosecutor's objection, reopened the hearing for the limited purpose of allowing defense counsel to cross-examine Officer Garcia with respect to the document.

At the reopened hearing, Officer Garcia testified that after defendant had been brought to Central Booking he had a conversation with an Assistant District Attorney, who wrote down the officer's recitation of the facts and circumstances leading to defendant's arrest. According to Garcia, he told the Assistant District Attorney that he was on routine patrol in plain clothes in an unmarked police car when he observed the livery cab being driven erratically. He followed the cab for a few blocks, observing defendant in the back seat, and pulled the cab over to investigate a possible robbery in progress. After asking defendant to get out of the cab, he recovered the gun. In Officer Garcia's view, the Assistant District Attorney's write-up, which was never read back to him and which he never had an opportunity to review, was merely an "interpretation" of his statement. Although admitting that he suspected that a

robbery might be in progress, Garcia testified that his primary reason for the stop was the cab driver's traffic infraction of driving the wrong way on a one-way street.

On the basis of Officer Garcia's new testimony, the hearing court granted suppression, finding that the livery cab was pulled over to investigate a robbery in progress. The court, citing *People v Rijo* (220 AD2d 217, *lv denied* 88 NY2d 852) and *People v Laws* (213 AD2d 226, *lv denied* 85 NY2d 975) for the proposition that New York courts look to the subjective intent of the officers at the time of the stop rather than apply an objective test, held that where, as here, the officers' intent was to investigate something other than the traffic offense, the stop was pretextual.

■■ Since we find that the hearing court erred in reopening the suppression hearing and in finding that the stop of the livery cab for a traffic violation was a pretext to investigate an unrelated robbery, we reverse and deny suppression. Moreover, we find that even under the test adopted by New York courts and applied by the hearing court (*see, e.g., People v Laws, supra*, 213 AD2d, at 227 [1st Dept]; *People v Llopis*, 125 AD2d 416, 417 [2d Dept]; *People v Letts*, 180 AD2d 931, 934 [3rd Dept], *appeal dismissed* 81 NY2d 833; *People v Camarre*, 171 AD2d 1002 [4th Dept], *lv denied* 78 NY2d 953), the stop was not pretextual.

■ The motion court, rather than applying the clear statutory provisions of CPL 710.40 (4), which would have mandated summary denial of the motion, reopened the hearing on the basis of "new evidence", even though the write-up was available to defense counsel at the time he cross-examined Officer Garcia at the original hearing. Moreover, the write-up represented, at best, impeachment material, not evidence of the officer's primary motivation in stopping the cab. Furthermore, finding itself constrained by New York law, which appears to accept a subjective, primary motivation test for determining whether a stop was pretextual, the court further erred in holding, despite Officer Garcia's testimony at the reopened hearing that his primary reason for stopping the cab was a traffic infraction, that the stop was pretextual.

CPL 710.40 (4) provides, in pertinent part, that "[i]f after * * * denial of [a suppression] motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the mo-

tion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial." Thus, to renew a suppression motion and reopen a hearing a defendant must make a two-pronged showing: he must show "additional pertinent facts" and show that those facts "could not have [been] discovered with reasonable diligence before the determination of the motion." Defendant has satisfied neither prong.

To qualify as "additional pertinent facts" the facts must, of course, be relevant to the issue of the legality of the stop "such that they would materially affect or have affected" the earlier determination. (*People v Clark*, 88 NY2d 552, 555 [*Wade* ruling].) As noted, defendant failed to make the requisite showing. The write-up contained a summary of Officer Garcia's statement in which he allegedly told an Assistant District Attorney that "he observed [the] livery cab driving in an erratic manner" and that, after following the cab for a few blocks, he pulled it over "to investigate a possible robbery in progress." At the original hearing, the officer testified that, after watching the cab being driven in an erratic manner, he pulled it over for a traffic infraction. The write-up did not refute Officer Garcia's hearing testimony since it confirmed that he had, indeed, observed erratic driving, and while it stated that he pulled the cab over to investigate a possible robbery, it did not indicate that the suspected robbery was the only reason for the stop. The write-up shows, at most, that the officer had more than one reason for stopping the cab. In that regard, under New York law, a vehicle may be stopped for a traffic infraction, even though the officer may also have reason to suspect that the vehicle was involved in an unrelated crime. (*People v Woods*, 189 AD2d 838, 842; *see, People v Coggins*, 175 AD2d 924, 926.) Thus, the write-up, which contained a slight variation as to the officer's subjective intent in stopping the cab, should not have been considered as materially affecting the original determination. (*See, People v Clark, supra*, 88 NY2d, at 554-556; *People v Stafford*, 215 AD2d 212, *lv denied* 86 NY2d 784; *People v Robinson*, 183 AD2d 420, *lv denied* 80 NY2d 837.)

Even if, however, the statement attributed to Officer Garcia in the write-up as to why he stopped the cab is viewed as being inconsistent with his prior testimony that he stopped the cab for traveling the wrong way on a one-way street, the statement could be used only for impeachment purposes on the issue of credibility and not as evidence-in-chief as to the officer's reason for stopping the cab. (*People v Patterson*, 203 AD2d 597, 598; Prince, Richardson on Evidence § 6-412, at 409-410 [Farrell

11th ed].) The hearing court, however, mistakenly considered the statement as evidence-in-chief, finding that Officer Garcia "testifie[d] that the reason for the stop was something other than the traffic infraction." The officer never testified that he stopped the cab for a reason other than a traffic violation. Moreover, while the write-up reflects the Assistant District Attorney's interpretation of the officer's reason for the stop, the officer, as the transcript of the reopened hearing shows, was never given an opportunity to review the document. The write-up was never read back to him.

Nor did defendant meet the second prong of CPL 710.40 (4)'s requirements since the record reveals that his attorney, almost three years before the hearing, received the write-up, which he admittedly overlooked at the time of Officer Garcia's cross-examination. In such circumstance, whatever the reason for the oversight, the write-up does not constitute "additional pertinent facts" that defendant "could not have discovered with reasonable diligence before the determination of the motion" (CPL 710.40 [4]; see, People v Mitchell-Benetiz, 168 AD2d 994, lv denied 77 NY2d 909), and the oral application to reopen the hearing should have been denied.

In any event, it was error to find that the stop of the livery cab was a pretext to pursue a robbery investigation. Although the Court of Appeals, in dicta, has expressed its concern about pretextual police conduct (see, e.g., People v Spencer, 84 NY2d 749, 753, cert denied 516 US 905; People v Woods, 64 NY2d 736, 737; People v Prochilo, 41 NY2d 759, 761-762), the court "has never expressly held pretextual search and seizure conduct invalid under article 1, § 12" of the State Constitution (Pitler, Independent State Search and Seizure Constitutionalism: The New York State Court of Appeals' Quest for Principled Decisionmaking, 62 Brooklyn L Rev 1, 283-284, n 1096). On the other hand, the United States Supreme Court, expressing the Federal view for determining the propriety of traffic stops, has held, contrary to the apparent New York rule, that the police officer's subjective reason for stopping an automobile is irrelevant as long as the stop is reasonable (Whren v United States, 517 US 806, 810-813) and that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" (supra, 517 US, at 810). The People urge us to uphold the stop on the basis of Whren. As already indicated, since the stop can be sustained under New York precedents, we need not reach the issue of the applicability of the Federal standard.

Although New York's intermediate appellate courts appear to have recognized the concept of pretext when a stop, ostensibly for a traffic infraction, is utilized primarily for an unrelated reason and have found such stops to be unjustified (*see, e.g., People v Laws*, 213 AD2d 226, *supra; People v David*, 223 AD2d 551, 552-553; *People v Young*, 241 AD2d 690; *People v Camarre*, 171 AD2d 1002, *supra),* they have never provided a uniform analytical framework for determining whether a stop is pretextual. As one commentator has noted, "New York courts have struggled to define the appropriate standard in determining whether a stop is pretextual. Unfortunately, the Court of Appeals has not provided any guidelines in this area and, as a result, lower courts have had to grapple with the subject." (Kamins, New York Search and Seizure, at 364 [1997 ed].) As a result, each Appellate Division Department has applied a variety of factors in determining an officer's primary motivation, including whether the officer checked on the car's registration or issued a summons to its driver (*see, e.g., People v Rijo*, 220 AD2d 217, *supra* [1st Dept]; *People v David*, 223 AD2d 551, *supra* [2d Dept]; *People v Woods*, 189 AD2d 838, 842, *supra* [2d Dept]); whether the officer made any inquiries regarding the alleged traffic violation beyond asking for the driver's license and registration (*see, People v David, supra,* at 553); whether the officer's assignment included the issuance of traffic summonses (*see, People v Laws, supra,* 213 AD2d, at 226-227; *People v Young*, 241 AD2d 690, *supra; People v Flanagan*, 56 AD2d 658, 660 [2d Dept]); whether the officer followed the vehicle before observing the traffic infraction (*People v Smith*, 181 AD2d 802, 803 [2d Dept]); whether, before the stop, the officer followed the car for a significant distance or, once stopped for a traffic infraction, detained defendant for an extended period of time (*see, People v Letts, supra,* 180 AD2d, at 932-934; *People v Mikel*, 152 AD2d 603, 605 [2d Dept]); and whether the officer had, prior to the stop, already determined to stop and arrest the defendant (*see, People v Camarre*, 171 AD2d 1002, *supra* [4th Dept]; *People v Vasquez*, 173 AD2d 580, 581 [2d Dept], *lv denied* 78 NY2d 1130).

Viewed in the light of such precedent, Officer Garcia's conduct in stopping the livery cab was clearly not a mere pretext for the purpose of investigating an unrelated robbery. He had witnessed the erratic driving immediately upon seeing the cab and followed it for only a short distance, four blocks at most, before stopping it when it turned onto a one-way street

going in the opposite direction. The officer could not ignore these violations and permit the cab to proceed further. Furthermore, when Officer Garcia exited the police car, he approached the cab driver, not defendant, the back seat passenger. Even after observing defendant bend down, make certain arm movements and then snap back to a sitting position, Officer Garcia did not seek to question him. Instead, he asked the cabdriver why he was swerving in and out of traffic and if anything was wrong. It was only after the driver replied that he was being confused by his passenger's directions that the officer became concerned and asked the sergeant to have defendant step out of the cab. Clearly, the officer's actions belie any intent, prior to the stop, to pursue an investigation of defendant concerning an unrelated robbery regardless of the traffic infraction. Only after defendant had exited the cab and the officer observed the butt of a gun sticking out from under the front passenger's seat in the area where defendant had been sitting did the officer's focus of attention turn toward defendant. All of these circumstances lead to the conclusion that, far from reflecting a desire to investigate an unrelated robbery, Officer Garcia's primary motivation in stopping the cab was, as he testified both at the hearing and reopened hearing, traffic infractions he had witnessed.

That Officer Garcia and the other officers were assigned to anticrime and thus were primarily engaged in the investigation of criminal activity, not the enforcement of traffic rules, does not detract from the proof that Garcia was primarily motivated in stopping the cab by the traffic infractions. As the officer testified, officers on anticrime assignment are authorized to make traffic stops and issue summonses when, as here, they witness a traffic violation. Nor is it significant that the officers directed defendant, not the driver, to step out of the cab since, at the time of the request, Officer Garcia had already observed defendant make arm movements in the back of the cab and then straighten up, justifiably causing Garcia to be concerned about his and the other officers' safety. While, concededly, the officers never issued a summons to the cabdriver for any traffic infraction, they can hardly be faulted for refraining from the issuance of a traffic summons upon the recovery of evidence of a more serious crime. Moreover, the cabdriver had a plausible explanation for his erratic driving. In any event, the failure to issue a traffic summons will not, in and of itself, warrant a finding that a stop was pretextual. (*See, People v Miller*, 216 AD2d 421, 422, *lv denied* 86 NY2d 874; *People v Garcia*, 179 AD2d 1047, 1049.)

Although great deference should be accorded the determination of a hearing court, which has the peculiar advantage of seeing and hearing the witnesses, such deference is unwarranted where its findings are " 'manifestly erroneous' " or, on the basis of the evidence, " 'plainly unjustified' ". (*People v Vasquez,* 166 AD2d 194, 195, *lv denied* 77 NY2d 845, quoting *People v Garafolo,* 44 AD2d 86, 88.) In such circumstances, this Court has the power to substitute its findings for those of the hearing court. (*People v Rickert,* 58 NY2d 122, 132-133.)

Reversal here is warranted since, as noted, the hearing court erroneously reopened the hearing and, at the reopened hearing, improperly applied current New York law in arriving at its determination that the stop was pretextual.

Accordingly, the order of the Supreme Court, Bronx County (Richard Price, J.), entered on or about April 9, 1996, granting defendant's motion to suppress physical evidence and his statement to the police, should be reversed, on the law and the facts, the motion denied and the matter remanded for further proceedings.

WILLIAMS, MAZZARELLI and ANDRIAS, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about April 9, 1996, reversed, on the law and the facts, the motion to suppress physical evidence and the statement to the police denied, and the matter remanded for further proceedings.