OPINION OF THE COURT
Lucy Billings, J.
Defendant is charged with reckless endangerment in the second degree, resisting arrest, aggravated unlicensed operation of a motor vehicle in the third degree, and reckless driving. (Penal Law §§ 120.20, 205.30; Vehicle and Traffic Law § 511 [1] [a]; § 1212.) The court held a pretrial hearing to determine whether physical evidence and defendant’s postarrest statement should be suppressed. (Mapp v Ohio, 367 US 643 [1961]; People v Huntley, 15 NY2d 72 [1965].)
I have read the transcript and the recommended findings of fact and conclusions of law from the hearing held February 26, 1998, in Part AP8A before Judicial Hearing Officer William H. Wallace III. I adopt his findings of fact and conclusions of law to the extent set forth below and modify them for the reasons stated.
FINDINGS OF FACT
The sole witness at the hearing was Police Officer Martin Williams of the New York City Police Department, 34th Precinct. The court finds his testimony credible.
In the early morning of April 10, 1997, Officer Williams and his partner were on motor patrol travelling south on St. Nicholas Avenue in New York County. They observed defendant Enerodilio Sanchez in a blue 1988 Toyota moving in the same direction. Officer Williams noted that defendant’s automobile lacked a working license plate lamp and decided to pull defendant over either to issue defendant a summons or to admonish him to repair the light. Officer Williams activated his police lights and siren and stopped defendant on the southwest corner of 186th Street and St. Nicholas Avenue.
Officer Williams parked behind defendant’s Toyota. As Williams and his partner exited their vehicle defendant leaned forward and lowered his left arm and shoulder. Defendant then drove off at a high speed, made a U-turn, and proceeded north at 40 to 50 miles per hour. Nearing 187th Street, defendant crossed the double yellow lines and travelled in the opposite lane of traffic toward a car stopped at a traffic light, before turning west on 187th Street.
Officer Williams and his partner set off in pursuit of defendant and reported defendant’s actions over police radio. They *698 followed defendant for about two minutes as defendant drove on 187th Street to Audubon Avenue where he made another turn, continued for two more blocks, and turned again at an intersection. At this point the officers received an order by police radio to end the pursuit in the interest of public safety. During the chase the officers observed defendant pass two red lights and a stop sign.
Officer Williams received a police radio message that other officers had followed defendant’s automobile until it crashed on the Bronx side of University Bridge. Arriving at the accident scene, Officer Williams found defendant sitting outside his demolished vehicle in handcuffs. Defendant, who appeared “flushed” and “nervous”, emitted the odor of an alcoholic beverage. (Transcript of proceedings, at 13 [Feb. 26, 1998].) Curious as to defendant’s motive for his behavior, Williams asked defendant why he had “run”. (Ibid.) Defendant answered “because my license is not good. I have a revoked license.” (Ibid.) Recalling that defendant had “reached down” on the left side of the driver’s seat before departing 187th Street, Officer Williams was concerned that the object of defendant’s interest might have been a weapon. (Ibid.) The officer searched under the driver’s seat and found a bottle of cognac.
Officer Williams placed defendant under arrest. The officer took defendant’s identification from him and checked the status of his driver’s license on the police computer. The license had been suspended and revoked.
CONCLUSIONS OF LAW
A. The Stop
1. The Standards for Determining the Propriety of a Vehicle Stop
The court rejects defendant’s initial claim, strenuously advanced at the hearing, that the police stopped his car as a pretext to investigate an unrelated offense. A police officer may lawfully stop a car where the officer has probable cause to believe the driver violated the Vehicle and Traffic Law. (Pennsylvania v Mimms, 434 US 106, 109 [1977]; People v Ellis, 62 NY2d 393, 396 [1984]; People v Ingle, 36 NY2d 413, 419 [1975].) Absent such a violation the police may stop a vehicle only where the circumstances justify a reasonable suspicion of criminality. (People v Spencer, 84 NY2d 749, 753 [1995].)
Even where the police have probable cause to believe traffic offenses occurred, New York courts have held that the police *699 may not exploit traffic offenses as pretexts to investigate unrelated criminality for which reasonable suspicion is lacking. (People v Laws, 213 AD2d 226, 227 [1st Dept 1995]; People v Smith, 181 AD2d 802, 803 [2d Dept 1992]; People v Llopis, 125 AD2d 416, 417 [2d Dept 1986].) If the court concludes the arresting officers would have ignored the traffic offenses but for curiosity, bias, or less than reasonable suspicion of unrelated criminality, the court may suppress evidence obtained as the result of the stop. (See, e.g., People v Martinez, 246 AD2d 456 [1st Dept 1998]; People v Rijo, 220 AD2d 217 [1st Dept 1995]; People v David, 223 AD2d 551, 553 [2d Dept 1996]; People v Lewis, 195 AD2d 523, 524 [2d Dept 1993].)
This inquiry into officers’ subjective reasons in order to determine the legality of vehicle stops departs from the usual objective standard for proper official action under the Fourth Amendment. (Maryland v Macon, 472 US 463, 470-471 [1985]; United States v Robinson, 414 US 218, 221, n 1 [1973]; People v Washington, 238 AD2d 43, 49 [1st Dept 1998]; People v McCoy, 239 AD2d 437, 439 [2d Dept 1997].) Federal courts have consistently applied an objective standard in analyzing the propriety of automobile stops for vehicle-related offenses. (See, e.g., Whren v United States, 517 US 806, 814 [1996]; United States v Cummins, 920 F2d 498, 500 [8th Cir 1990]; see also, People v McCoy, 239 AD2d, at 439 [collecting cases from other States].)
In dicta the New York Court of Appeals has implicitly accepted the subjective pretext analysis, but the Court has never expressly invalidated an automobile stop as pretextual under the New York Constitution. (People v Spencer, 84 NY2d, supra, at 753; People v Woods, 64 NY2d 736, 737 [1984].) The First Department’s recent restatement of pretext analysis, moreover, holds that automobile stops for traffic offenses are proper “even though the officer may also have reason to suspect that the vehicle was involved in an unrelated crime.” (People v Washington, 238 AD2d, supra, at 48; see also, People v Ross, 228 AD2d 718 [3d Dept 1996]; People v Coggins, 175 AD2d 924, 926 [2d Dept 1991].) This holding blurs the distinction between the Federal and State standards and appears to move toward the Federal standard in practical application.
2. The Standards’ Practical Application
If the police have a reasonable suspicion that an unrelated crime was or is about to be committed an automobile stop is justified on that ground alone. (People v Tillie, 239 AD2d 670, *700 672 [3d Dept 1997].) If “reason to suspect” is not equivalent to “reasonable suspicion”, so long as the officers intend to stop an automobile for a traffic offense, whatever other motivations they simultaneously entertain appear to be irrelevant under Washington (supra). Thus the conclusion that a stop is not pretextual, if “based on the officer’s observation” of a violation of the Vehicle and Traffic Law (People v Jackson, 241 AD2d 557 [2d Dept 1997]), is simply the outcome of an objective test.
On the other hand, to suggest that an objectively valid traffic stop is pretextual because it was “predicated on something other than the traffic infractions that the officers observed” (People v Owens, 164 Misc 2d 15, 18 [Sup Ct, NY County 1995] [emphasis supplied]), assumes the point to be proved. Police officers, concerned with unrelated criminal activity, are not required to ignore traffic offenses because an inference later might be drawn that they would have ignored those offenses absent the unrelated concern. (People v Coggins, 175 AD2d, supra, at 926.) Nothing in Washington (supra) requires proof that the officer would have effected the traffic stop absent suspicions of unrelated criminal activity.
It is even less clear that suppression would be required where police officers in fact had a basis for reasonable suspicion of criminality unrelated to a traffic offense, but mistakenly concluded they lacked that reasonable suspicion and employed a traffic offense to stop an automobile. Arrests for criminal conduct are always proper under the Fourth Amendment, “even if the purpose of a lawful arrest is to question [a defendant] about another offense.” (People v Reynolds, 240 AD2d 517, 518 [2d Dept 1997].) It follows that where officers have probable cause to arrest a person for criminality unrelated to a traffic offense, and they employ a traffic offense to effect the seizure as a pretext to gather evidence of the crime, relying on the traffic offense does not generate grounds for suppression. (People v Tillie, 239 AD2d, supra, at 672.) In light oí Washington (supra), it makes little sense to insist that where a police officer admits he stopped an accused for a traffic offense as well as to investigate an unrelated criminal offense, the stop was not “predicated” on the officer’s observation of the traffic offense “as a matter of law.” (People v Woods, 64 NY2d, supra, at 737.) As in People v Tillie (239 AD2d, supra, at 672), where there is “ample evidence in the record indicating that the van could also have been stopped due to the traffic infractions”, the court need not reach the issue of alleged pretext, thus, at least as a practical matter, adopting the objective standard. In sum, the *701 logical extension of Washington all but abandons the subjective test.
As a practical matter, applying a purely objective test to traffic stops produces substantially the same results as the Washington standard. (See, People v McCoy, 239 AD2d 437, supra.) If the court does not credit an officer’s testimony that an observed traffic offense was the basis for the stop, the resulting evidence is unlawfully obtained, not on the basis of pretext, but simply for lack of legal justification. (Cf., People v Vasquez, 173 AD2d 580, 581 [2d Dept 1991].) The same result would obtain where no traffic offense occurred, despite the officers’ testimony to the contrary, or where the traffic offense is proved, but the officers admit they did not act on it. “Where the alleged vehicle and traffic violation does not motivate the stop, it cannot be used to justify the stop.” (People v Ynoa, 223 AD2d 975, 978 [3d Dept 1996].) On the other hand, if the court credits the officer’s testimony that a traffic offense was committed, pursuant to Washington and Tillie (supra), it is irrelevant what other concerns the officer may have entertained.
Even if it is determined that a traffic offense stop, however objectively justified, was motivated solely by ulterior considerations, nothing in the application of an objective test lessens the constitutional scrutiny. The duration and intensity of a seizure and the scope of any résulting search still must be limited by the antecedent justification. The poststop investigation can proceed no further than what is justified by the vehicle or traffic offense and the unfolding encounter. (People v Banks, 85 NY2d 558, 562 [1995]; People v De Bour, 40 NY2d 210, 222-223 [1976]; People v Ross, 228 AD2d 718, 718-719, supra; People v Woods, 189 AD2d 838, 842 [2d Dept 1993]; cf., People v Mikel, 152 AD2d 603, 605 [2d Dept 1989].)
3. The Standards’ Application in this Case
Applying the objective test mandated under the Fourth Amendment, the stop of defendant’s automobile was entirely proper. Officer Williams credibly testified that the rear license plate on defendant’s Toyota lacked illumination, a violation of Vehicle and Traffic Law § 375 (2) (a) (4). This testimony is a legally sufficient basis to conclude that the stop was justified.
This court, nevertheless, is bound by superior State courts and by its own Appellate Division when the Departments are divided on an issue. (People v Shakur, 215 AD2d 184, 185 [1st Dept 1995]; Stewart v Volkswagen of Am., 181 AD2d 4, 7 [2d Dept 1992]; cf., People v Brewer, 173 Misc 2d *702 520, 528 [Sup Ct, Queens County 1997].) Assuming Washington (238 AD2d 43, supra) affirms a pretext analysis, it nevertheless permits officers to intend to enforce traffic regulations and investigate unrelated criminality simultaneously. The case draws an inference of impermissible pretext only where the record supports no other conclusion than that an officer stopped an automobile for the sole purpose of investigating an unrelated criminal offense for which reasonable suspicion was lacking. (People v Watson, 157 AD2d 476, 477 [1st Dept 1990]; People v Roundtree, 234 AD2d 612, 613 [2d Dept 1996]; People v Ynoa, 223 AD2d, supra, at 978.) When this subjective test is applied defendant’s claim still must be rejected.
At the hearing, defendant argued that Officer Williams’ failure, following the stop, to investigate the condition of the license plate light or to issue a summons for such a defect, implies either that no such defect existed or that the traffic offense was solely a pretext to stop defendant for the investigation of unrelated matters. (People v Rijo, 220 AD2d 217, supra; People v David, 223 AD2d 551, 553, supra.) These claims are unpersuasive.
The argument that the defect never existed merely challenges the witness’ credibility as to whether he had probable cause to stop defendant’s car. The court’s finding that the officer was a credible witness on that point answers that claim without reference to pretext. (People v McGriff, 219 AD2d 829, 830 [4th Dept 1995]; People v Ardila, 159 AD2d 710 [2d Dept 1990].)
Regarding the further claim, Officer Williams stated he had discretion to issue a warning in lieu of a summons and he had not determined to issue defendant a summons when he stopped defendant’s car. Defendant’s sudden departure prevented further investigation into the alleged equipment defect at the scene of the stop. Moreover, his subsequent commission of several, more serious offenses rendered the failure to charge a violation of Vehicle and Traffic Law § 375 (2) (a) (4) unremarkable. That offense is minor compared to the number and severity of the offenses subsequently committed, and defendant’s automobile crash meant that mechanical testing likely could not prove the light was not functioning before the accident.. No evidence was adduced at the hearing regarding possible or actual unrelated criminal activity, and the witness testified to no suspicions regarding any such activity or defendant’s possible involvement. The court, therefore, cannot conclude from this record that the officer’s failure to charge de *703 fendant with the equipment offense justifies the inference that the initial stop was a pretext to investigate a wholly unrelated offense for which reasonable suspicion was lacking. (People v Washington, 238 AD2d, supra, at 51; People v Miller, 216 AD2d 421, 422 [2d Dept 1995]; People v Wilmot, 204 AD2d 750 [2d Dept 1994]; People v Coggins, 175 AD2d 924, 926, supra.)
B. The Arrest
The police may arrest a person for committing a traffic offense. (Vehicle and Traffic Law § 155; CPL 140.10 [1] [a]; People v Marsh, 20 NY2d 98, 101 [1967].) Thus defendant’s arrest on University Bridge was justified on this basis alone. Even if this court concluded, however, that the initial stop was pretextual, for which no arrest was authorized, defendant was not entitled to commit several subsequent violations of law in departing from the scene of the stop. (People v Townes, 41 NY2d 97, 102 [1976]; People v Manning, 199 AD2d 621, 622 [3d Dept 1993].) His violations of law — driving in the opposite lane of traffic and passing a stop sign and two red lights on city streets at high speed — were “independent act[s] involving a calculated risk.” (People v Boodle, 47 NY2d 398, 404 [1979].) These violations justified his subsequent arrest, whatever the propriety of the prior stop. (People v Britz, 239 AD2d 428, 429 [2d Dept 1997]; People v Manning, 199 AD2d, at 622; People v Chaney, 163 AD2d 617, 618 [3d Dept 1990].)
C. The Statement
Although the court concludes that the stop and arrest were proper, the court agrees with defendant that his statement to the arresting officer at the arrest scene must be suppressed as the result of illegal custodial interrogation. The record contradicts the Judicial Hearing Officer’s conclusion that Officer Williams effected defendant’s arrest at the crash site after defendant made his admission.
Officer Williams testified that when he encountered defendant “in custody” on the University Bridge, he was outside his automobile and in handcuffs applied by other officers. (Transcript of proceedings, at 13.) An officer’s subjective impression of an accused’s custodial status, however, is not dispositive of whether an arrest has been effected. (People v Hicks, 68 NY2d 234, 240 [1986].) Moreover, a person may be detained in handcuffs without requiring the inference of a formal arrest. (People v Allen, 73 NY2d 378, 379-380 [1989].)
“[W]hether a suspect is in custody is generally a question of fact”. (People v Morales, 65 NY2d 997, 998 [1985].) The applic *704 able standard is what a reasonable person in defendant’s position, innocent of any crime, would have believed. (People v Yukl, 25 NY2d 585, 589 [1969].) Defendant, pursued at high speed by relays of uniformed police officers in marked vehicles, was handcuffed and detained at the crash scene for the arrival of Officer Williams. This seizure “constitute[d] a restraint on his * * * freedom of movement of the degree associated with a formal arrest”. (People v Bennett, 70 NY2d 891, 894 [1987].) No person in defendant’s position, innocent of any crime, reasonably could have believed otherwise. Indeed, Officer Williams had the same understanding of the situation upon his arrival at the accident scene, and the People conceded as much in their arguments to the Hearing Officer. While the conclusions of the witness and prosecutor are not controlling, neither are the administrative decisions among police precincts regarding who is entitled to credit or responsibility for an arrest.
The People’s argument that despite defendant’s arrest, the officer’s question “was not part of an interrogation,” is likewise without merit. (Transcript of proceedings, at 40.) With few exceptions, the warnings required by Miranda v Arizona (384 US 436 [1966]) constitute a necessary predicate to custodial interrogation. Brief questioning of an arrestee at a crime scene “in order to ascertain transpiring events” is one exception to the Miranda requirement. (People v Maldonado, 184 AD2d 590 [2d Dept 1992]; see also, People v Nesby, 161 AD2d 246, 247 [1st Dept 1990]; People v Burnett, 228 AD2d 788, 790-791 [3d Dept 1996].) Where the criminal events are concluded, and “the situation no longer requires clarification of the crime or its suspects”, however, the Miranda warnings must be waived before a person in custody may be questioned, even at the scene of the crime. (People v Soto, 183 AD2d 926, 927 [2d Dept 1992]; see also, People v Huffman, 41 NY2d 29, 33-34 [1976].)
When Officer Williams encountered defendant at the accident scene, defendant was in custody, and the offenses for which defendant was the sole suspect had concluded. The hearing testimony indicated no danger to the police or public, no possible risk of destruction of evidence, and certainly no compelling, immediate necessity for determining defendant’s motivations for his acts. The court therefore suppresses defendant’s response to Officer Williams’ question as the result of an improper custodial interrogation.
D. Physical Evidence
The court agrees with the Judicial Hearing Officer’s conclusion denying suppression of the cognac bottle, but not for the *705 reason the witness articulated and the People urged: Officer Williams’ fear for his safety. The hearing record does not disclose any objective circumstance justifying the officer’s stated fear in searching under the driver’s seat in defendant’s demolished vehicle. (People v Belton, 55 NY2d 49, 54-55 [1982].) At the time of the search, defendant had been removed from his car, handcuffed, and placed in custody. There were no other persons in the car, and defendant was in no position to reenter it. Defendant was not suspected of committing any offense involving or commonly associated with weapons, nor had any reason developed in the course of the investigation to believe defendant might be armed. (People v Torres, 74 NY2d 224, 231, n 4 [1989].)
The sole basis for the officer’s stated fear was defendant’s gesture in appearing to reach under the driver’s seat just before departing from the scene of the initial stop. The mere act of reaching down, without evidence even that the gesture involved secreting an object, does not amount to “objective circumstances constituting a threat from an already detained suspect” or any other articulable basis for justifying a fear for one’s safety. (People v Cisnero, 226 AD2d 279, 280 [1st Dept 1996]; see also, People v Carvey, 89 NY2d 707 [1997]; People v Bu Chann, 221 AD2d 155 [1st Dept 1995]; People v Chapman, 211 AD2d 544 [1st Dept 1995]; People v McCready, 121 AD2d 897, 898 [1st Dept 1986].)
Nevertheless, the search was proper under the exception to the warrant requirement that authorizes a warrantless search of a vehicle when the circumstances give reason to believe the vehicle may contain evidence of a suspect’s criminal conduct. (People v Blasich, 73 NY2d 673, 680 [1989]; People v Belton, 55 NY2d, supra, at 54-55.) Defendant’s erratic behavior, his flight, his commission of several egregious traffic offenses, his flushed appearance, and the odor of an alcoholic beverage on his breath in the early morning provided probable cause to believe he was intoxicated. (People v Barnum, 175 AD2d 332, 333-334 [3d Dept 1991].) It is inconsequential that defendant was not arrested for driving while intoxicated. (People v Blasich, 73 NY2d, supra, at 680.)
DISPOSITION
Therefore, although the court does not find that the stop of defendant’s automobile was pretextual, the court rejects the Judicial Hearing Officer’s recommendation and grants defendant’s motion to suppress his statement on other grounds. The *706 court adopts the Hearing Officer’s recommendation regarding the cognac bottle recovered from defendant’s car, however, and denies suppression of the physical evidence.