OPINION OF THE COURT
Kenneth R. Fisher, J.
The defendant was arraigned and pleaded not guilty to a two-count indictment charging him with one count of criminal possession of a controlled substance in the fourth degree in violation of Penal Law § 220.09 (1) and one count of unlawful possession of marihuana in violation of Penal Law § 221.05. These crimes are alleged to have been committed on February 8, 1999. The defendant filed motions requesting suppression of the evidence seized from the defendant and evidence seized from the car in which the defendant was riding, on the ground that the police had no reason to stop his car, and otherwise exceeded the bounds of an investigatory stop. A hearing was held on November 5, 1999, pursuant to CPL 710.60 (4), and the following constitutes the court’s decision and order denying the motion to suppress the evidence seized from the defendant *641 and the evidence seized from the car in which the defendant was riding.
THE FACTS
On February 8, 1999 Officer Anthony Bongiovanni was observing traffic headed northbound on Joseph Avenue. As a white 1995 BMW drove by, Bongiovanni noticed that the driver of the BMW was not wearing a seat belt. He began following the vehicle and ran a records check of the license plate. Bongiovanni eventually stopped the vehicle on Seneca Avenue, near Route 104. As Bongiovanni approached the vehicle, black curtains began to rise in the windows, obstructing the officer’s view into the car. Bongiovanni immediately called for backup, but continued to approach the driver. As the officer began talking to the driver, Terrance Wright, he detected a moderate smell of marihuana emitting from the car. He described the smell as that of unburned marihuana or a stale smell of burned marihuana. He then asked Wright for a driver’s license. Wright could not produce a driver’s license, so Officer Bongiovanni asked Wright to accompany him to his squad car. When they arrived at the squad car, Bongiovanni asked Wright for any kind of identification. Wright said he did not have any identification. Bongiovanni then patted Wright down “for safety,” and then placed Wright into the police car. He asked Wright whether there was any more marihuana left in the car. Wright stated that he was not sure because his friend, Leroy, seated inside the car, had smoked the marihuana. Bongiovanni then asked Wright if he could search the vehicle for marihuana or weapons. Wright consented to the search of the BMW.
Bongiovanni approached the vehicle again, this time with the backup he had requested from other officers over the radio. Bongiovanni asked the defendant, who was seated in the front passenger seat, to get out of the car. Two females were seated in back. He asked the defendant if he had any weapons or identification on him. The defendant produced identification and stated that he had no weapons. Bongiovanni asked defendant to step up on the sidewalk. Officer Muskco, who arrived to back up Bongiovanni, searched the BMW. Muskco found a small amount of marihuana in a closed compartment located in the armrest or console between the driver’s seat and the front passenger’s seat, and notified Bongiovanni of his find. Bongiovanni told the defendant marihuana had been found in the vehicle, and more fully frisked him. Bongiovanni detected a lump around his groin area. He asked the defendant what the lump *642 was. According to Bongiovanni, the defendant said, “All right, you got me,” then reached down into his pants, pulled out a white, rock-like substance, and gave it to Bongiovanni. According to Terrance Wright’s testimony, Bongiovanni searched the defendant by unfastening his pants, taking a flashlight and looking down into the pants of the defendant.
Bongiovanni suspected the rocky, white substance was cocaine. He then placed the defendant under arrest, and he led the defendant to Officer Muskco’s police car. Bongiovanni searched the defendant again before placing him into the police car. This second search produced a “blunt” quantity of marihuana (i.e., a cigarette) and over $500 in cash. The driver, Terrance Wright, testified for the defendant. He maintained that he was wearing his seat belt, that the officers never mentioned the seat belt, that they asked him about a hit-and-run accident over at the University of Rochester across town, that he freely gave the officers permission to search the car, that no one ever smelled marihuana and that both he and the defendant were searched in the manner specified above, with a flashlight pointing down their pants, instead of the gradual outside-pat frisk method. Wright’s testimony, however, was seriously compromised by his acknowledgment that a ticket was given to him for failure to wear a seat belt (thus negating his prior testimony that no one mentioned the seat belt issue) and that he indeed pleaded guilty to a seat belt violation. Wright’s explanation of the curtains rising in his automobile (they were “broke”) also undermined his credibility overall.
DISCUSSION
Defendant contends, relying largely on the testimony of Terrance Wright, that the stop of the vehicle was without probable cause or reasonable suspicion (Wright claimed to be wearing his seat belt despite his guilty plea), and made as a pretext for conducting an investigation of the University of Rochester hit-and-run accident. The concept of “pretext,” or an analysis of the subjective motivations of the police conducting a stop of a vehicle, has no place in Fourth Amendment jurisprudence. (Whren v United States, 517 US 806, 813 [1996] [“Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis”]; United States v Scopo, 19 F3d 777, 780 [2d Cir 1994], cert denied 513 US 877 [1994]; United States v Barber, 839 F Supp 193, 199 [WD NY 1993] [anticipating Whren and Scopo].) Accordingly, under the Fourth Amendment, a police officer may stop a vehicle upon an objective indication of *643 criminal activity, such as an observation of an offense or traffic violation, regardless of the true investigative motivations of the police. (Whren v United States, supra.) “[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.” (Scott v United States, 436 US 128, 138 [1978].) This is just another way of stating that the text of the Amendment, particularly by its reference to unreasonable searches and seizures, compels an objective approach.
The same rule is applied in New York under New York Constitution, article I, § 12, concerning which, except in special cases which invoke collateral New York constitutional rights (People v Harris, 77 NY2d 434 [1991]), or which involve sudden and dramatic changes in direction by the Supreme Court (People v Scott, 79 NY2d 474, 497 [1992]), neither of which is at issue here, “it may be assumed, as a general proposition, that the two provisions [i.e., NY Const, art I, § 12, and US Const 4th Amend] confer similar rights.” (People v Harris, 77 NY2d, at 437 [1991].) Thus, many cases in the Second Department have applied Whren (supra). (See, People v King, 266 AD2d 239 [2d Dept 1999] [rejecting pretext theory]; People v Ortiz, 265 AD2d 579 [2d Dept 1999] [same]; People v Gomcin, 265 AD2d 493 [2d Dept 1999] [same]; People v Henry, 258 AD2d 473 [2d Dept 1999] [same] [collecting cases]; People v Dougherty, 251 AD2d 344, 344-345 [2d Dept 1998] [“stop was not rendered invalid even though the defendant was also suspected of burglary”]; People v McCoy, 239 AD2d 437, 439 [2d Dept 1997] [same — with discussion].) Even before Whren, the Second Department applied an objective approach. (People v Green, 103 AD2d 362, 365 [2d Dept 1984]; People v Lopez, 95 AD2d 241, 248-250 [2d Dept 1983, Lazer, J.].) There is authority to the contrary elsewhere (see, People v Martinez, 246 AD2d 456 [1st Dept 1998], and cases cited in People v McCoy, 239 AD2d, at 439), but these cases are not controlling or persuasive after Whren. Although making several oblique references to pretext (e.g., People v Spencer, 84 NY2d 749, 753 [1995]; People v Troiano, 35 NY2d 476, 478 [1974]), the Court of Appeals has never explicitly applied a subjective approach (Pitler, Independent State Search and Seizure Constitutionalism: The New York State Court of Appeals’ Quest for Principled Decisionmaking, 62 Brook L Rev 1, 284, n 1096 [1996] [collecting cases] [“the court has never expressly held pretextual search and seizure *644 conduct invalid under article 1, § 12”]), and application of a separate State constitutional rule in this context has not been made by the Court of Appeals since Whren was decided. (See, People v Washington, 238 AD2d 43, 49 [1st Dept 1998].)
Creation of a separate rule would not appear to be consonant with relevant Court of Appeals precedents in this area of law (see, People v Woods, 64 NY2d 736, 737 [1984], affg over dissent of Alexander, J., 104 AD2d 322 [1st Dept 1984] [stop upheld on ground of observation of expired registration sticker; dissent embraces pretext theory that plainclothes officers on “anticrime patrol” in an unmarked van only interested in a drug search of van]), and in any event cannot be made for the first time by a court at nisi prius (People v Brewer, 173 Misc 2d 520 [Sup Ct, Queens County 1997]), nor even by an Appellate Division. (People v Keta, 165 AD2d 172, 177-178 [2d Dept 1991], revd on other grounds 79 NY2d 474 [1992].)
Moreover, this case does not involve a search and seizure context, i.e., investigative or traffic stops, or special circumstances, appropriate for the creation of a separate State constitutional rule under New York Constitution, article I, § 12. Unlike People v Harris (supra), traffic stops upon probable cause to believe a traffic violation has occurred do not invoke special State constitutional guarantees such as the right to counsel vindicated in Harris. Nor does this case involve “a sharp or sudden change in direction by the United States Supreme Court [which] dramatically narrows fundamental constitutional rights,” as was perceived in People v Scott (79 NY2d, supra, at 497, 485, 486-487; People v Torres, 74 NY2d 224, 228 [1989] [“ ‘ “predictability and precision” ’ ”] [quoting People v P. J. Video, 68 NY2d 296, 304 (1986)]; see, United States v Scopo, supra; United States v Barber, supra, 839 F Supp, at 197-200 [both anticipating Whren (supra) as firmly established by prior Supreme Court precedents]).
The objective test has always been, at least since Terry v Ohio (392 US 1 [1968]), the touchstone in this area under the Federal Constitution. (Maryland v Macon, 472 US 463, 470-471 [1985]; Scott v United States, 436 US 128, 138 [1978], supra; United States v Robinson, 414 US 218, 221, n 1, 236 [1973] [quoted in Whren v United States, 517 US, supra, at 812-813]; see also, Horton v California, 496 US 128, 131, 138 [1990]; United States v Jenkins, 496 F2d 57, 72-73 [2d Cir 1974]; United States v Tramontana, 460 F2d 464, 466-467 [2d Cir 1972] [relying on Terry v Ohio, 392 US 1, 21 (1968)]; Beck v Ohio, 379 US 89, 96 [1964]; Ralph v Pepersack, 335 F2d 128, *645 133-134 [4th Cir 1964]; see, People v Lopez, 95 AD2d, supra, at 248 [which observed that, “(n)ot only does the subjective approach place a premium on dissemblance, but the difficulty of administering a standard which turns upon motivation would approach futility and would produce a fruitless allocation of judicial resources”].) And to the court’s observation about the “ ‘white heart and empty head’ ” standard in People v Jennings (54 NY2d 518, 523 [1981]), discussed in People v Lopez (95 AD2d, at 249-250), it might just as well be added that the objective standard “is no less necessary when a mistake on the part of a police officer is arguably beneficial to the accused.” (United States v Tramontana, 460 F2d, at 467.) Of course, there are exceptions in the inventory and administrative search contexts, which are not relevant here. (Scott v United States, 436 US, at 139, n 13.) Therefore, the preconditions for creation of a separate State constitutional rule in this area do not appear to be present, and the presumption of general consistency (People v Harris, 77 NY2d, at 437) prevails. To hold otherwise would, as seen below, subject a police officer to separate and differing constitutional standards applicable to the vehicle stop itself, and the subsequent conduct argued to be within the permissible dimensions of a traffic or investigative detention, because, for the most part, the State and Federal constitutional standards applicable to the latter are consonant (see, below).
Finally, application of the objective test leaves open the issue whether pretextual police conduct violates the Equal Protection Clause. (Brown v City of Oneonta, 203 F3d 153 [2d Cir 1999]; United States v Scopo, 19 F3d, supra, at 786 [Newman, Ch. J., concurring].) It is perhaps for this reason that the Supreme Court employs an objective approach. What does it matter, from the defendant’s perspective, that the officer had impure thoughts, at least in the Fourth Amendment sense and not the equal protection sense? If the officer had pure thoughts, that is if he stopped the car solely for an observed traffic infraction, no one can seriously question that everything that happened to Wright and the defendant was permitted under both Constitutions (see, below). How, then, can the invasion of privacy be any greater if the officer harbored impure thoughts of a collateral investigation, if he otherwise confined himself to the permissible dimensions of a traffic stop? To hold that an impure motivation taints the stop when a pure motivation would result in a denial of suppression encourages tunnelvision in police work, and would give ultimate expression to Cardozo’s famous line, “the criminal is to go free because the con *646 stable has blundered,” here only in his thoughts and not in his deeds.
Unquestionably, Officer Bongiovanni had the issue of a possibly stolen car in mind before he stopped the vehicle. He admitted as much in his testimony when he acknowledged following the car for awhile after he observed the seat belt violation to run a record check of the license plate. In addition, although Terrance Wright’s testimony in other respects was not credible, it would have been difficult to make up the detail about a hit-and-run accident involving a white car across town at the University of Rochester. That part of Wright’s testimony had the ring of truth about it. Nevertheless, Bongiovanni, who was merely on traffic patrol at the time in a fixed position in his squad car, personally observed the seat belt violation. In such circumstances, even the one court in New York which has applied a subjective test post-Whren (supra; see, People v Martinez, 246 AD2d 456 [1st Dept 1998], supra; but compare, People v Jones, 219 AD2d 417, 421 [1st Dept 1996]) has nevertheless upheld a similar stop as occurred in this case. (People v Washington, 238 AD2d 43, 49-50 [1st Dept 1998], supra). In Washington, a collateral motivation was alleged to have prompted the stop. But the Court credited, as this court here credits, the officer’s personal observation of Vehicle and Traffic Law violations, and it held that the police “could not ignore these violations and permit the cab to proceed.” (Supra, 238 AD2d, at 51.) The Court found, as this court finds here, that the “primary motivation” for stopping the vehicle was the Vehicle and Traffic Law violations, notwithstanding that the officers were not on traffic detail and they did not, ultimately, issue a traffic summons. (Supra, 238 AD2d, at 51; see also, United States v Dhinsa, 171 F3d 721, 725 [2d Cir 1999] [observation of traffic violation justifies stop even though the observation did not “even partially motivate( )” the stop and no traffic summons was issued].) Here, of course, a traffic summons was issued and the driver, not the defendant, pleaded guilty to it. The stop was justified under these New York decisions, even if there was also a collateral motivation, especially because the traffic violation was committed in the officer’s presence. (See also, People v Dillard, 212 AD2d 1029, 1030 [4th Dept 1995]; People v Gadsden, 192 AD2d 1103 [4th Dept 1993]; compare, People v James, 217 AD2d 969, 969-970 [4th Dept 1995].[1]
*647 After stopping the vehicle, Bongiovanni approached the driver. As he did so, he observed black curtains begin to rise inside the windows. After calling for backup, Bongiovanni approached the driver’s window and asked the driver, Terrance Wright, for his driver’s license. Wright could not produce one. Bongiovanni thereupon asked Wright to accompany him to the squad car, where he asked for any kind of identification. Wright said he had no identification. Bongiovanni then patted Wright down for weapons and placed him in the squad car. Assuming that the defendant has standing to challenge any of these measures, it is clear that each was justified. When a driver of a vehicle stopped for a traffic violation cannot produce identification, the police are authorized to make a full custodial arrest and transport the driver to the station house. (People v Ellis, 62 NY2d 393, 396 [1984]; People v Clark, 227 AD2d 983, 984 [4th Dept 1996]; People v Alexander, 189 AD2d 189, 194-195 [4th Dept 1993]; People v Watson, 177 AD2d 676 [2d Dept 1991]; People v Miller, 149 AD2d 538, 541 [2d Dept 1989].) In addition, they are permitted to conduct a full search incident to an arrest. (People v Copeland, 39 NY2d 986, 987 [1976].) Accordingly, the patdown search of Wright was justified.[2]
*648 Officer Bongiovanni testified that, when he first approached the car, he smelled a moderate or stale odor of marihuana coming from inside of the car. Although the smell of marihuana alone is sufficient to provide trained and experienced police officers in the area of narcotics probable cause to search a vehicle and its occupants (People v Turchio, 244 AD2d 366, 367 [2d Dept 1997]; People v Gresty, 237 AD2d 931 [4th Dept 1997]; People v Mangan, 55 AD2d 247, 250 [3d Dept 1976]; see also, People v Chestnut, 43 AD2d 260, 261 [3d Dept 1974], affd 36 NY2d 971 [1975]), Bongiovanni also received permission from the driver, Terrance Wright, to search the car after he was questioned about the marihuana smell. The consent was given shortly after Wright told Bongiovanni that the defendant was the one who had smoked the marihuana. The consent of the driver “is a valid substitute for probable cause.” (People v Barclay, 201 AD2d 952, 953 [4th Dept 1994].) Bongiovanni reapproached the car with backup officers nearby, and ordered defendant out of the front passenger seat so Officer Muskco could search the vehicle. A person has no standing to challenge a search of a vehicle in which he is a mere passenger. (People v Hooper, 245 AD2d 1020 [4th Dept 1997]; see, People v Reynolds, 216 AD2d 883 [4th Dept 1995].) The defendant did not demonstrate a personal legitimate expectation of privacy in the searched premises. (People v Tejada, 81 NY2d 861, 862 [1993].)
It also was proper to ask defendant to alight while the search occurred. Particularly in view of the rising curtains inside the car, it would have been lawful for the officers initially to direct defendant out of the vehicle as a safety precaution without further inquiry. (Maryland v Wilson, 519 US 408 [1997]; People v Carvey, 89 NY2d 707, 710 [1997]; People v Robinson, 74 NY2d 773, 774 [1989]; People v Miles, 208 AD2d 1089, 1091 [3d Dept 1994]; People v Guzman, 153 AD2d 320, 322 [4th Dept 1990].) Instead, Bongiovanni relied on his backup for safety and focused on the driver. That Bongiovanni waited to direct defendant out of the car until he had probable cause to believe defendant was smoking marihuana is of no consequence. (People v Gil, 211 AD2d 99, 101-102 [1st Dept 1995].) The searching officer found a small amount of marihuana in a closed compartment of the armrest area. Defendant has no standing to contest the seizure of this evidence, and his motion to suppress it is denied.
Once Officer Bongiovanni was made aware that marihuana was found in the car, he searched the defendant. He discovered a bag of crack cocaine hidden near the defendant’s *649 groin area. The legality of the search of the defendant can be sustained because the officer had probable cause to arrest the defendant for marihuana possession at the time of the search, by virtue of what Wright told Bongiovanni and the discovery of marihuana in the car. It is immaterial that the search occurred before a formal arrest because the search was founded upon probable cause. (People v Landy, 59 NY2d 369, 377 [1983].)
Once the crack cocaine was discovered, Officer Bongiovanni formally placed the defendant under arrest. The defendant was led to a police car and searched again. The second search of the defendant produced a “blunt” and over $500 in cash. The defendant has moved to suppress evidence recovered from the second search. However, our law clearly states an officer can conduct a full search incident to a lawful arrest. (United States v Robinson, 414 US 218, 237 [1973], supra; People v Troiano, 35 NY2d 476, 478 [1974].)
CONCLUSION
Accordingly, the motion to suppress the evidence seized from the person of the defendant and the evidence seized from the car is denied.

. The reference in Washington (supra) to “primary motivation” may be overstated, and recalls the analysis of mixed motive endorsed by the Supreme *647 Court in another context, and in which Fourth Amendment “taint” or causation cases figured. (Mt. Healthy City School Dist. Bd. of Educ. v Doyle, 429 US 274, 284-287 [1977].) If two motives are shown to be in the decisionmaker’s mind, one constitutional and the other unconstitutional, the claimant loses if the Government can show that it would have made the same decision anyway, a result said to place the claimant in no better position than he would be in if the unconstitutional motive was not present. (Supra, 429 US, at 285-286.) “[I]f the lawful reason alone would have sufficed to justify” the action taken by the governmental actor, there is no “necessity ** * * of disentangling the proper motive from the improper one where both played a part in the * * * [action taken] and the former motive would suffice to sustain * * * [that action].” (McKennon v Nashville Banner Publ. Co., 513 US 352, 359 [1995].) This is not the “could have” approach Whren (supra) endorses, because “ ‘proving that the same decision would have been justified * * * is not the same as proving that the same decision would have been made.’ ” (Supra, at 360, quoting Price Waterhouse v Hopkins, 490 US 228, 252 [1989] [plurality opn].) But it identifies what is meant by “primary motivation” in those First Department cases which continue to apply some variant of the subjective or pretext approach posi-Whren, and in the pre-Whren Fourth Department cases cited above. The point is that, on this record, Bongiovanni would have made the stop for the observed traffic violation, even in the absence of any collateral investigative motivation.

. While defendant would not have standing to challenge these measures, the legality of them is reached here, because in some pre-Whren Fourth Department cases, what the officers did upon stopping the car figured in the determination whether the stop was justified in the first instance. (E.g., People v Gadsden, 192 AD2d 1103, supra.)