◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER LLOPIS, Appellant.—Appeals by the defendant from three judgments of the County Court, Nassau County (Winick, J.), all rendered April 25, 1984, convicting him of burglary in the second degree under indictment No. 57402, criminal impersonation in the first degree under indictment No. 57403, and burglary in the second degree under indictment No. 57493, upon his pleas of guilty, and imposing sentences. The appeals bring up for review the denial, after a hearing (Murray, J.), of those branches of the defendant's omnibus motion which were to suppress certain statements made by the defendant to the police, and certain physical evidence.

Ordered that the judgments are reversed, on the law and the facts, those branches of the defendant's omnibus motion which were to suppress physical evidence and statements are granted, the indictments are dismissed, and the matter is remitted to the County Court, Nassau County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On June 23, 1983, at approximately 2:00 P.M., Police Officer Kevin O'Toole was patrolling alone in a marked radio motor patrol car in Rockville Centre. As he attempted to make a left-hand turn from North Village Avenue onto Lexington Street to investigate a commercial vehicle parked in that residential area, he discovered that his way was partially blocked by a Ford Thunderbird parked within 10 feet of the stop sign located at the intersection of Lexington Street and North Village Avenue. O'Toole observed that the Thunderbird was occupied by two individuals and noticed that the passenger's head "dropped from seated level approximately six to eight inches as if to shrink down".

O'Toole did not complete the turn, but continued slowly on North Village Avenue, watching the Thunderbird in his rear view mirrors. The Thunderbird slowly moved into the intersection, and when O'Toole slammed on his brakes to see how the driver of the vehicle would react, the Thunderbird rapidly crossed the intersection, went on an access road, and then entered Peninsula Boulevard. O'Toole turned around and followed the Thunderbird onto Peninsula Boulevard, and as he

gained on that car, he saw the two occupants looking over their right shoulders, and saw their shoulders rise and fall several times in a reaching motion. The speed limit on Peninsula Boulevard is 40 miles per hour, and O'Toole testified at the hearing that to the best of his recollection, the Thunderbird was traveling at a speed of 45 to 50 miles per hour. O'Toole then pulled up alongside the Thunderbird and directed it to the side of the road, at a location about three quarters of a mile from where it entered Peninsula Boulevard. O'Toole identified the defendant as the driver of the Thunderbird, and further testified that a subsequent search of the car produced the proceeds from two burglaries.

The hearing court held that the stop of the vehicle was justified because Officer O'Toole had first observed the car parked within 10 feet of a stop sign in violation of Vehicle and Traffic Law § 1202 (a) (2) (c), and that such a violation supplied the reasonable suspicion necessary for such a stop (see, People v Sobotker, 43 NY2d 559). However, there is nothing in the record to indicate that O'Toole stopped the defendant to ticket him for parking too close to the stop sign. Indeed, when O'Toole was asked during cross-examination to explain his reasons for stopping the car, he stated: "For the actions that occurred from the point I first saw them at Lexington Street, from their reaction of—their apparent reaction when I hit the brakes; my observations of both defendants; the concern of my whereabouts by their turning action, looking for me; by their actions of them appearing to pick something up and put it under their seats; everything that I have testified to today". It is clear that Officer O'Toole pulled the Thunderbird over, not because it was improperly parked or was speeding, but because of the actions and reactions of the occupants of the car. The police may not use traffic violations as a mere pretext to investigate the defendant on an unrelated matter (see, People v Seward, 91 AD2d 1005; People v Flanagan, 56 AD2d 658). Here, neither the parking infraction nor the alleged speeding violation motivated the police action, and they thus cannot be used to justify the stop. As the stop was not justified, the defendant's spontaneous statement made to the police, the physical evidence seized from his person and pursuant to a search of the Thunderbird, and his fingerprints must be suppressed. Mollen, P. J., Bracken, Brown and Sullivan, JJ., concur.