■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THEODORE McCoy, Appellant. [657 NYS2d 437] —Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Cowhey, J.), rendered July 6, 1994, convicting him of

robbery in the first degree, grand larceny in the fourth degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Carey, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony.

Ordered that the judgment is affirmed.

At the pretrial suppression hearing, a City of Yonkers police officer testified that, at the roll call which preceded the commencement of his 3:00 P.M. to 11:00 P.M. tour of duty on January 3, 1993, he had been advised that fellow officers "had received information regarding * * * a robbery that was possibly to occur that day". The police had been furnished with information leading them to believe that the individuals suspected of planning the robbery were "one white male by the name of Raymond Thompson, approximately thirty years old, and another white male named Theodore McCoy, approximately thirty years old, driving a 1977 green Dodge Aspen". These two men were also suspects in connection with a prior robbery.

While on patrol, shortly after 4:00 P.M., this officer saw a green "older model type vehicle". The officer observed that the vehicle had a defective tail light, and later saw the driver of the vehicle make a left turn without signalling 100 feet in advance. The officer also believed that neither the driver nor the passenger was wearing a seat belt, although he acknowledged that "he couldn't tell".

The officer and his partner "decided to pull [the vehicle] over for a traffic infraction", and activated the emergency lights. The driver of the green vehicle pulled over and stopped. The officer approached the passenger side, and saw the man whom he would later identify as the defendant. The officer noticed that neither occupant of the vehicle had his seat belt fastened. The officer's suspicions were intensified by his observation of two ski masks and a bag which, it was later ascertained, contained surgical gloves. The officer asked the defendant for identification, and, in response, the defendant "proceeded into the glove box [and] pulled out a wallet". At this point the officer saw what he believed to be the "butt end of a gun protruding from a towel". The ensuing search of the vehicle led to the discovery of evidence used against the defendant in the subsequent prosecution.

In support of his contention that the evidence obtained from the search of the vehicle should have been suppressed, the de-

fendant argues that the initial stop of the vehicle was illegal. He also argues that, even if the stop were legal, the officer's request for identification was not. Relying on the officer's acknowledgment, on cross-examination, that the reason he had asked the defendant to produce identification was "to know whether or not he was the individual that was possibly wanted for the robbery", the defendant argues that "based on this improper request alone [the] conviction should be reversed". We do not agree.

Various decisions of the Appellate Division may be cited for the broad proposition that "[t]he police may not use traffic violations as a pretext to investigate the defendant on an unrelated matter" (People v Llopis, 125 AD2d 416, 417; see also, People v Roundtree, 234 AD2d 612; People v Ynoa, 223 AD2d 975; People v David, 223 AD2d 551; People v James, 217 AD2d 969). However, there is also authority for the proposition that an objectively valid traffic stop will not be deemed "pretextual" merely because the officer who conducts the stop is aware that the vehicle "matches a description of a vehicle involved in unrelated criminal activity" (People v McGriff, 219 AD2d 829, 830; see also, People v Woods, 189 AD2d 838). Also, the Supreme Court has recently held that, in general, the legality of a search or seizure is to be measured by the objective circumstances, and not by the subjective motivation of the officer (Whren v United States, 517 US 806; see also, Smith v State, 687 So 2d 875 [Fla App]; State v Vineyard, 1996 WL 400518 [Tenn Crim App]; State v George, 557 NW2d 575 [Minn]; State v Rivera, 1996 WL 753088 [Conn Super Ct]; People v Hill, 929 P2d 735 [Colo]; People v Brownlee, 674 NE2d 503 [Ill App]).

We conclude that the initial stop of the defendant's vehicle was objectively valid based on the officer's personal observation of various traffic infractions, and that it was no less valid merely because the officer might also have been entertaining more serious suspicions as a result of the second-hand information which had been furnished to him at the roll call (see, Whren v United States, supra; People v Blasich, 73 NY2d 673; People v Adams, 53 NY2d 1, 10-11; People v McBean, 123 AD2d 401, 402-403). The stop was valid irrespective of whether the information furnished at the roll call, considered in isolation, would properly have served to establish a reasonable suspicion. Thus, the officer's conduct was objectively lawful at every stage, and "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" (Whren v United States, 517 US, at 813, supra).

The defendant's remaining contentions are meritless. Bracken, J. P., Santucci, Altman and McGinity, JJ., concur.