OPINION OF THE COURT
Frank P. Geraci, Jr., J.
The People have appealed from an order of Rochester City *675 Court (King, J.), dated August 5, 1999, which granted defendant’s motion to suppress all evidence obtained as a result of an unlawful stop of defendant’s automobile. Following this stop, defendant was charged by simplified traffic information with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) and (3), and operating an unregistered motor vehicle in violation of Vehicle and Traffic Law § 401 (1) (a).
The undisputed facts are that at approximately 14 minutes past midnight on March 6, 1999, Rochester Police Officer Korey Brown was on routine patrol on Lyell Avenue when he first observed a known male prostitute enter defendant’s red pickup truck which was parked in a nearby parking lot. When the vehicle exited the parking lot, Officer Brown turned his patrol car around, followed the vehicle, and proceeded to rim a registration check of the license plate on his multiple data terminal, whereupon he discovered an expired registration^ Upon stopping the vehicle, the officer had defendant, the driver, exit his vehicle and then placed him in the backseat of the patrol car. According to Officer Brown, this action was taken in order to separate the occupants while he investigated prostitution activity. Officer Brown proceeded to conduct his prostitution investigation. In doing so, he noticed indicia of the driver’s intoxication, including bloodshot, watery eyes, mumbled and slurred speech, and flushed complexion, and he detected a strong odor of alcoholic beverage. Officer Brown then had defendant exit the patrol car and perform various sobriety tests. Upon defendant’s failure of a number of these tests, the officer arrested him for driving while intoxicated (DWI). The 10-minute investigation yielded no evidence of prostitution and no charges related to prostitution were ever filed against either occupant of the vehicle. Defendant was placed under arrest for the Vehicle and Traffic Law violations.
Officer Brown was the sole witness called to testify at the probable cause hearing. On the basis of the testimony related above, the hearing court issued a written decision granting defendant’s motion for suppression of all evidence derived from the stop, detention and arrest on the ground that reasonable suspicion for the stop and probable cause for the arrest for DWI were lacking. In so ruling, the court determined that vehicular traffic stops must be nonpretexual and that the standard for assessing whether a stop is nonpretextual is a primary motivation test, citing People v Dickson (180 Misc 2d 113, 114). As regards the instant facts, the court further stated: “In *676 this case, the primary motivation of the officer was investigation of perceived prostitution activity. A factual examination of the officers [sic] subjective as well as objective reasons for the random check of the vehicle’s license plate leads this court to the irrefutable conclusion that it was based on the mere whim and idle curiosity of the officer (see, People v. Ingle, 36 NY2d 413, 42[0]). The license plate check was unrelated to a traffic or equipment violation, a traffic check or enforcement of regulations. There was lack of reasonable suspicion of criminal activity by the driver or passenger that they had committed, or was [sic] about to commit],] a crime. The fact that a person entering a vehicle was a cross-dressing prostitute, does not reasonably denote criminal conduct by the defendant. Given the severe weather conditions that existed, another reasonable explanation could be that defendant was duped in believing he was giving a ride to a woman who was exposed to the extreme cold and snow. In any event, the officer observed no criminal conduct; his investigation of the matter and detention of defendant for ten minutes resulted in no charges against either for prostitution activities. Apparently there was lack of evidence evincing criminal activity on behalf of the driver or his passenger. A good faith belief by the officer that there was a violation of the vehicle and traffic law, coupled with the surrounding circumstances [,] did not provide reasonable suspicion of criminal activity to justify the stop (see, [Matter of] Bayer [sic] v. Jackson, 241 AD2d 943).”
The charges were dismissed, on motion of defendant, after the People verified that no other evidence existed upon which to proceed with the criminal prosecution. This appeal ensued.
During oral argument held in this court, counsel reiterated their respective positions set forth in the briefs submitted on this appeal and further cited new case law developments in this area since those documents were prepared. The People’s main contention is that pursuant to Whren v United States (517 US 806) the hearing court erred in finding the stop of the defendant’s vehicle to be illegal, given that the police officer’s subjective motivation or intention is of no moment. Defendant’s position is that the law in New York State supports the court’s ruling since it is long settled in this State that vehicular stops based upon pretext are outlawed. ■
The question presented here is a significant one: Does the United States Supreme Court decision in Whren v United States (517 US 806, supra), interpreting Fourth Amendment protections against unreasonable searches and seizures, govern *677 automobile stops in New York State such that pretextual stops are legal thereunder?
In Whren (supra), a case[1] which arose in the District of Columbia, the United States Supreme Court held that the temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment’s prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. The Court went on to state that it believed its prior decisions in United States v Villamonte-Marquez (462 US 579 [1983]), United States v Robinson (414 US 218 [1973]), and Scott v United States (436 US 128 [1978]) served to “foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved,” and further iterated that “[s]ubjective intentions[2] play no role in ordinary, probable-cause Fourth Amendment analysis” (Whren v United States, supra, at 813).
Where there exists a conflict between New York courts and the United States Supreme Court as to the meaning of Federal statutes and the Federal Constitution, “[a] 11 courts are, of course, bound by the United States Supreme Court’s interpretations of Federal statutes and the Federal Constitution” (People v Kin Kan, 78 NY2d 54, 59; see also, People v Dunn, 77 NY2d 19, 23-24). That the language of the Fourth Amendment and of section 12 of article I of the NY Constitution contains identical wording prohibiting unreasonable searches and seizures,[3] in the past, has provided a sufficient basis upon which to premise the assumption that the two provisions confer simi *678 lar rights, and moreover, such consistency being desirable to facilitate the implementation of search and seizure rules (see, People v Harris, 77 NY2d 434, 437).
However, notwithstanding this general support for a “policy of uniformity” and motivation for consistency (see, People v Keta, 79 NY2d 474, 496-497), the New York State Court of Appeals, in keeping with its reverence for our time-honored constitutional system of Federalism, has not hesitated to interpret article I, § 12 of the NY Constitution independently of its Federal counterpart, e.g., when the analysis adopted by the United States Supreme Court in a given area has served to undercut the rights of New York State citizens to be free from unreasonable government intrusions (People v Dunn, 77 NY2d 19, 24, supra), or to best promote “ ‘ “the protection of the individual rights of our citizens” ’ ” (People v Harris, 77 NY2d 434, 438), or when doing so best promotes “predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens” (People v Johnson, 66 NY2d 398, 407; see also, People v Torres, 74 NY2d 224, 228). “When weighed against the ability to protect fundamental constitutional rights, the practical need for uniformity can seldom be a decisive factor” (People v P. J. Video, 68 NY2d 296, 304).
This is especially apparent in the area of search and seizure, where the Court of Appeals has carved out an independent body of search and seizure law under the New York State Constitution (see, e.g., People v Scott, 79 NY2d 474 [holding that in land outside the curtilage the owner has a constitutionally protectible interest under article I, § 12]; People v Dunn, 77 NY2d 19, cert denied 501 US 1219, supra [holding canine sniff to be a search, i.e., an invasion of the defendant’s expectation of privacy under article I, § 12]; People v Torres, 74 NY2d 224, 227-228, supra [rejecting the expansive view of “stop and frisk” procedures involving automobiles as adopted in Michigan v Long (463 US 1032) as inconsistent with the privacy rights *679 guaranteed by article I, § 12]; Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 65-69 [holding that mandatory drug testing of teachers constituted an illegal search in violation of teachers’ rights of personal privacy protected by article I, § 12]; People v P. J. Video, 68 NY2d 296, 303-309, supra [holding that under article I, § 12, more stringent standards are required than demanded by the Supreme Court for issuance of search warrant for videotapes in obscenity prosecution]; People v Class, 67 NY2d 431, 433, on remand from 475 US 106 [adhering to previous ruling (see, People v Class, 63 NY2d 491) that police officer’s nonconsensual entry into defendant’s automobile to determine the vehicle identification number violated defendant’s legitimate expectation of privacy under article I, § 12]; People v Johnson, 66 NY2d 398, supra [declining under article I, § 12 to apply to warrant-less arrests the “totality of the circumstances” analysis outlined by the Supreme Court in Illinois v Gates, 462 US 213]; People v Bigelow, 66 NY2d 417 [declining to follow the “good faith” exception to warrant requirements set forth in United States v Leon (468 US 897) and Massachusetts v Sheppard (468 US 981)]; People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231; People v Belton, 55 NY2d 49, on remand from 453 US 454). In each of these examples, the Court of Appeals sought to provide meaningful guidance to law enforcement and other governmental entities in the performance of their respective duties relative to State citizenry (People v Johnson, 66 NY2d 398, 407; People v Belton, 55 NY2d 49, 55, n 4).
Interestingly, in the aftermath of Whren (supra), the highest court of another State recently, in grappling with this issue, has held that pretexual traffic stops are made without “authority of law,” and are therefore prohibited under the State Constitution (State v Ladson, 138 Wash 2d 343, 979 P2d 833). Citing established State precedent governing warrantless stops of automobiles for the purpose of investigation, the court interpreted the pertinent constitutional provision[4] to be “explicitly broader than that of the Fourth Amendment” such that “the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation” (State v Ladson, supra, 138 Wash 2d, at 348-349, 979 P2d, at 837-838).
*680 Having said all that, the Court of Appeals, in view of the Whren decision (517 US 806, supra), has yet to undertake a constitutional analysis of the primary motivation test for determining pretextual stops. Noting that the Court of Appeals “has never expressly held pretextual search and seizure conduct invalid under article I, [§] 12,” author Robert M. Pitler (Independent State Search and Seizure Constitutionalism: The New York State Court of Appeals’ Quest for Principled Decisionmaking, 62 Brook L Rev 1, 283, n 1096 [1996]) went further to expressly acknowledge that, “[n]onetheless, all of this dicta disapproving pretextual police conduct has been turned into black letter principles by lower courts, at least with respect to automobiles. Thus, in determining whether the stop of an automobile is simply a pretext to search or to obtain information to justify a search of either the vehicle or the driver, New York intermediate appellate courts have looked to the subjective police purpose in making the stop. [Citations omitted.] Under the Fourth Amendment, the subjective police reason for stopping an automobile is irrelevant provided the stop is reasonable and ‘as a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.’ See, Whren v. United States, 116 S.Ct. 1769, 1772 (1996).”
It appears that many of those lower courts, when called upon to consider the validity of certain traffic stops, have adhered to the announced principle that “police stops of automobiles in this State are legal only pursuant to routine, nonpretextual traffic checks to enforce traffic regulations or when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime” (see, People v Spencer, 84 NY2d 749, 753). Genesis of the logic and rationale underlying such principle undoubtedly appears to have sprung from earlier Court of Appeals pronouncements.
The New York State Court of Appeals has stated, “time and again, that the stop of an automobile is a seizure implicating constitutional limitations” (see, People v Spencer, 84 NY2d 749, 752, supra, citing People v May, 81 NY2d 725; People v Sobotker, 43 NY2d 559; People v Ingle, 36 NY2d 413, supra; see, Delaware v Prouse, 440 US 648, 653). An investigative stop is such a seizure within the meaning of constitutional strictures and requires at least “reasonable suspicion of criminal activity” (see, People v Singleton, 41 NY2d 402, 405; People v Harrison, 57 NY2d 470, 476; People v Sobotker, supra, at 563; People *681 v Ingle, supra, at 417-420). A motor vehicle on a public highway may be stopped for specific cause or reasonable suspicion of a violation of the law or in accordance with nonarbitrary, nondiscriminatory, uniform procedures, such as at roadblocks, checkpoints and weighing stations, but “mere whim, caprice, or idle curiosity” will invalidate such a stop (see, People v Ingle, supra, at 420).
Reasonable suspicion has been defined as “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand” (see, People v Cantor, 36 NY2d 106, 112-113; People v Sobotker, supra, at 564). “The requisite knowledge must be more than subjective-, it should have at least some demonstrable roots,” since “[mjere ‘hunch’ or ‘gut reaction’ will not do” (see, People v Sobotker, supra, at 464 [emphasis added]). “Vague or unparticularized hunches will not suffice” (People v Cantor, supra, at 113). Without question, the arbitrary stopping of vehicles traveling upon New York highways is expressly prohibited.
It is apparent that prior to Whren (supra), it was generally considered a well-settled principle of New York law that police officers could not use traffic violations as a mere pretext to investigate the defendant on an unrelated matter (see, People v Ynoa, 223 AD2d 975 [3d Dept 1996]; People v Laws, 213 AD2d 226 [1st Dept 1995]; People v Lewis, 195 AD2d 523 [2d Dept 1993]; People v Smith, 181 AD2d 802 [2d Dept 1992]; People v Letts, 180 AD2d 931 [3d Dept 1992]; People v Camarre, 171 AD2d 1002 [4th Dept 1991]; People v Watson, 157 AD2d 476 [1st Dept 1990]; People v Llopis, 125 AD2d 416; People v Flanagan, 56 AD2d 658 [2d Dept 1977]). In each of these cases, appellate courts, while expressing concerns regarding proper police conduct in these types of encounters, looked beyond the traffic violation to explore the officer’s primary or subjective motivation for making the stop in the first instance.
Over the four-year span since the United States Supreme Court decided Whren (supra), it has become eminently clear that in New York an unresolved issue exists regarding the underpinnings of the acknowledged prohibition against pretextual stops. There is an apparent conflict among the decisions of the various intermediate appellate courts regarding whether Whren supercedes the long-held principle that pretextual stops are outlawed. In the absence of clarification from our Court of Appeals, in the form of a clear and concise declaration as to whether the proscription against pretextual stops (see, People v *682 Spencer, 84 NY2d 749, 752-753, supra) is historically and expressly grounded in the independent protection against unreasonable searches and seizures provided in article I, § 12 of the NY Constitution, State appellate and other courts have adopted various analytical approaches to this issue. The First Department appears to have gradually changed its position regarding pretextual stops in favor of Whren’s objective standard. Initially, that Court, in reliance upon its own prior decisions and the subjective test for determination of the validity of traffic stops adopted by New York courts, applied the primary motivation standard (see, e.g., People v Washington, 238 AD2d 43; People v Martinez, 246 AD2d 456). Most recently, however, in People v Robinson (271 AD2d 17, 24), the First Department expressly opted to “adopt and follow the Federal view that the subjective reason of the police for stopping an automobile is irrelevant in ascertaining probable cause as long as the stop was reasonable.” The Second Department appears to have adopted the position that the objective test enunciated in Whren is controlling (see, e.g., People v McCoy, 239 AD2d 437; People v Dougherty, 251 AD2d 344; People v Henry, 258 AD2d 473; People v Leon, 264 AD2d 784; People v Ortiz, 265 AD2d 579; People v King, 266 AD2d 239). While citing Whren, that Court has shied away from engaging in any analysis of the constitutional underpinnings, if any, of the primary motivation standard for pretext stops. The Third Department has continued its analysis of pretextual stops using the primary motivation test (see, e.g., People v Peterson, 245 AD2d 815; People v Grow, 249 AD2d 686). Deferring to the “more stringent New York precedent,” the Fourth Department has declined to apply the objective standard set forth in Whren (see, People v Perruccio, 267 AD2d 1082, 1083, lv denied 94 NY2d 905).
Worthy of note, several nonappellate court decisions have treated the issue of pretext quite differently. In People v Lucas (183 Misc 2d 639) the Monroe County Supreme Court, citing the reasoned approach set forth in Whren (supra), applied an objective analysis in assessing reasonable cause for the particular vehicular stop. To the contrary, in People v Dickson (180 Misc 2d 113) the court therein decided the facts presented using the primary motivation test which, by its estimation, “New York courts have either explicitly or implicitly employed” (at 117) and is an approach “consistent with the policies which have long served as an underpinning of New York’s constitutional protections” (at 121).
To be sure, it has been proffered, and this court readily acknowledges, that the authority to interpret State constitu *683 tional provisions so as to confer additional protections upon citizens of this State than afforded under the Federal Constitution is vested in the Court of Appeals (see, People v Keta, 165 AD2d 172, 177-178, revd on other grounds 79 NY2d 474, supra). The decision in this case is by no means an attempt to usurp that authority.
However, this court cannot ignore the body of decisional law in this State which continued to flourish even in the face of those United States Supreme Court pronouncements which were relied upon in Whren (supra) as standing for the proposition that no new legal principles were created by its holding. While not eschewing the unquestionable significance of Whren’s articulation of the proper standard to be employed in analyzing the ambit of Fourth Amendment protections as related to traffic stops, this court is persuaded by the reasoning which recognizes that a different, more stringent standard has long been employed in this State (see, People v Spencer, 84 NY2d 749, supra).
Therefore, this court must render a decision warranted by such fair analysis of the issues presented within the factual context of the instant case. The record in this case is clear. Admittedly, in his decision to stop defendant’s vehicle, Officer Brown was primarily motivated to investigate an unfounded suspicion that prostitution activity had been; or was about to be, committed. The traffic check was no more than a pretext for conducting a criminal investigation unrelated to any observed traffic infraction. The lower court’s determination that the stop was invalid was not improper, and as such all evidence flowing therefrom was properly suppressed.

. Whren (supra) presented no opportunity for the Supreme Court to interpret or analyze State law.

. As regards race as the subjective motivation for stopping a defendant’s vehicle, the Supreme Court acknowledged that selective enforcement of the laws is prohibited on such basis, stating that “the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment” (Whren v United States, 517 US 806, 813, supra).

. The search and seizure provision of the Fourth Amendment to the United States Constitution states: “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Article I, § 12 of the New York Constitution provides:
“The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, *678 and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
“The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.”

. Washington Constitution, article I, § 7 provides: “No person shall be disturbed in his private affairs, or his home invaded, without authority of law.”